**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 12-cv-3272-WJM

EPPIE ESPINOZA,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

      Defendant.

---

### ORDER AFFIRMING DECISION OF THE DEPARTMENT OF JUSTICE

---

This appeal from an administrative denial of benefits under the Radiation Exposure Compensation Act ("RECA") is before the Court under 42 U.S.C. § 2210 note, Sec. 6(l).  Plaintiff Eppie Espinoza ("Plaintiff") challenges the final decision of Defendant, the Department of Justice ("DOJ"), denying his application for benefits under RECA.  The Court held Oral Argument in this case on November 22, 2013.

After carefully considering the evidence presented, counsel's arguments in their briefs and at the hearing, and the applicable law, the DOJ's decision denying Plaintiff's application for RECA benefits is AFFIRMED.

## I. BACKGROUND

**A.    Statutory and Regulatory Background**

The Radiation Exposure Compensation Act was enacted in 1990 to provide compensation to individuals who developed a qualifying illness following exposure to radiation from nuclear weapons tests, or as a result of employment in the uranium

production industry during the Cold War era.  *See* Pub. L. No. 101-426; 104 Stat. 920

(codified as amended in 42 U.S.C. § 2210 note ("RECA")).  RECA provides monetary

benefits to, among others, individuals who developed a qualifying illness after being

employed as uranium miners in specified states between January 1, 1942, and

December 31, 1971, and either (1) were subjected to 40 working level months[1]

("WLMs"), of radiation, or (2) worked in qualifying employment for at least 12 months.

*See id.* § 5.

    RECA claims are processed by the Radiation Exposure Compensation Program

("RECP"), a unit within the Constitutional and Specialized Tort Litigation Section of the

Civil Division of the Department of Justice ("DOJ").  *See* RECA § 6(b)(1); 28 C.F.R. §

79.70.  Under the federal regulations implementing RECA, a uranium miner or surviving

beneficiary who seeks compensation must file a claim with the RECP.  28 C.F.R. §

79.72.  A designated Assistant Director then adjudicates the claim and issues a written

decision.  *Id.*  A claimant who is denied compensation may appeal to a designated

Appeals Officer within 60 days of the initial decision.  *Id.* at § 79.73(a).  The Appeals

Officer's decision is the final agency action on the claim, after which a denied claimant

may seek judicial review in the district court.  *Id.* at § 79.73(d)-(e).  A claimant may also

re-file a denied claim up to three times, where the claimant "obtains documentation that

he or she did not possess when the claim was filed previously and that redresses the

deficiency for which the claim was denied."  *Id.* at § 79.71(j)-(k).

---

    [1] A "working level month" is a unit of radiation defined as radiation exposure at the level
of one "working level"—a specified quantity of radon—every work day for a month, or an
equivalent exposure over a greater or lesser amount of time.  RECA § 5(b)(1)-(2).

In 2000, Congress amended RECA in several ways, including expanding the ways in which claimants could demonstrate their eligibility for benefits.  Pub. L. No. 106-245 § 3(e)(2); 114 Stat. 507 (codified at 42 U.S.C. § 2210 note).  The 2000 Amendments permitted a claimant to rely on affidavits made by persons other than the claimant "in addition to any other material that may be used to substantiate employment history for purposes of determining working level months".  *Id.*  The subsequently amended regulations specified that affidavits by third parties, made under penalty of perjury, would be accepted for only limited purposes, including "[t]o establish employment in a uranium mine", and "[t]o substantiate the claimant's uranium mining employment history for purposes of determining working level months of radiation exposure".  28 C.F.R. § 79.4(c)(3)-(4).

## B.     Procedural and Factual History

On May 28, 2008, Plaintiff filed *pro se* his first of two RECA claims requesting benefits as a former uranium miner.  (Admin. Record ("R.") (ECF No. 11) at 299-322.)  This first claim was denied by the Assistant Director on December 18, 2008.  (R. at 185-87.)  Plaintiff appealed the denial, which was affirmed by the Appeals Officer on May 21, 2009.  (R. at 172-81.)

In 2010, with the assistance of an attorney, Plaintiff re-filed his claim for RECA benefits, and provided more specific information with respect to his uranium mining employment history.  (R. at 125-50.)  Plaintiff stated that he had worked for the Kerr-McGee Corporation in New Mexico in two underground uranium mines, Section 30 and Section 35, from March to December 1963 and from January to May 1965, for a total of 15 months.  (R. at 132.)  Plaintiff's re-filed claim included an affidavit by Plaintiff

3

("Plaintiff's Affidavit"), and another by his aunt, Juanita Espinoza, with whom he lived while working as a uranium miner ("First Affidavit").  (R. at 151-52.)

The DOJ evaluated Plaintiff's second claim and found that, based on the Social Security Administration ("SSA") earnings records for Plaintiff during the applicable time period, Plaintiff had established only 0.2 months of uranium mining employment, from which it was estimated that Plaintiff had been exposed to only 0.3 WLMs of radiation.  (R. at 32-34.)  After explaining this in a deficiency letter dated November 23, 2010,[2] the DOJ invited Plaintiff to submit additional documentation to establish the qualifying level of at least 40 WLMs, or at least 12 months of uranium mining employment.  (R. at 32-34.)  Plaintiff failed to submit any additional evidence.  (R. at 27.)

On April 29, 2011, the Assistant Director denied Plaintiff's second claim due to the deficiencies previously identified.  (R. at 23-27.)  The Assistant Director considered the First Affidavit, but found that it lacked specificity with respect to Plaintiff's uranium mining employment to overcome the SSA evidence.  (R. at 26.)  The Assistant Director also noted mine inspection records showing that, for the Kerr-McGee Section 35 mine where Plaintiff allegedly worked underground in 1965, the work sinking the shaft to create the underground mine did not begin until 1968.  (R. at 26 n.3.)  Thus, ignoring the Section 35 mine and calculating the radiation exposure for the Section 30 mine during the 0.2 months the SSA records suggested Plaintiff worked, the Assistant Director determined that Plaintiff had been exposed to only 0.4 WLMs of radiation, and

---

[2] Although Plaintiff must also prove that he suffers from a qualifying illness in order to be entitled to benefits, the letter noted no deficiencies in that area.  (*See* R. at 32-34.)  However, in oral argument, counsel for the DOJ clarified that because Plaintiff's claim was denied on other grounds, the DOJ has not yet reached the question of whether Plaintiff developed a qualifying illness.

thus was not eligible for benefits.  (R. at 26.)

Through his attorney, Plaintiff appealed this denial on June 24, 2011.  (R. at 16-22.)  In his appeal, Plaintiff attached a new affidavit from Juanita Espinoza ("Second Affidavit"), which made more specific references to the dates and mines where Plaintiff worked.  (R. at 19.)  Upon receiving the Second Affidavit, a DOJ attorney contacted Plaintiff's counsel by e-mail, informed him that the Appeals Officer was precluded from considering new evidence on appeal, and inquired as to whether Plaintiff would like to re-file his claim with the new evidence in lieu of proceeding with the appeal.  (R. at 15.)  Plaintiff's counsel, contending that new evidence could be considered, elected to proceed with the appeal.  (*Id.*)  On September 26, 2011, the Appeals Officer affirmed the denial of Plaintiff's second claim, and declined to consider the Second Affidavit because it was not part of the record in the decision below.  (R. at 1-13.)  The Appeals Officer's decision is the final administrative action for purposes of review.

Plaintiff filed this action on December 14, 2012, amended his Complaint on February 28, 2013, and filed his Opening Brief on July 12, 2013.  (ECF Nos. 1, 9, 15.)  The DOJ filed its Response on August 9, 2013 (ECF No. 16), and Plaintiff filed his Reply on August 27, 2013 (ECF No. 17).  Based upon Plaintiff's request for oral argument in the Joint Case Management Plan for Petitions for Review of Agency Action, the Court set this case for Oral Argument, which was held on November 22, 2013.  (ECF Nos. 19, 20.)

## II.  LEGAL STANDARD

District courts must review a denial of benefits under RECA based upon the administrative record, and may set aside the denial only "if it is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." RECA § 6(l). This standard is identical to the standard of review of agency action under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(2)(A). Accordingly, courts have referred to cases interpreting the APA standard when reviewing RECA cases, holding that, as with the APA, "[t]he duty of a court reviewing agency action under the arbitrary or capricious standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Howell v. Reno*, 939 F. Supp. 802, 805 (D. Colo. 1996) (quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994)); *see also Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 643 (10th Cir. 1990). This standard is both "narrow and highly deferential to the agency." *Compass Envtl., Inc. v. Occupational Safety & Health Review Comm'n*, 663 F.3d 1164, 1167 (10th Cir. 2011).

Under the RECA regulations, the claimant "bear[s] the burden of providing evidence of the existence of each element necessary to establish eligibility" for benefits. 28 C.F.R. § 79.4(a). However, "[i]n the event that reasonable doubt exists with regard to whether a claim meets the requirements of the Act, that doubt shall be resolved in favor of the claimant or eligible surviving beneficiary." *Id.* § 79.4(b).

### III.  ANALYSIS

Plaintiff raises several arguments that the denial of his claim should be reversed, contending that: (A) the DOJ improperly applied the "reasonable doubt" standard in 28 C.F.R. § 79.4(b); (B) the Appeals Officer improperly rejected new evidence on appeal; and (C) the DOJ improperly considered Ms. Espinoza's affidavits. (ECF Nos. 15, 17.) The Court will discuss each argument in turn.

6

A.      **Reasonable Doubt**

RECA requires that, "[i]n the event that reasonable doubt exists with regard to whether a claim meets the requirements of the Act, that doubt shall be resolved in favor of the claimant or eligible surviving beneficiary."  28 C.F.R. § 79.4(b); RECA § 6(b)(1) ("All reasonable doubt with regard to whether a claim meets the requirements of this Act shall be resolved in favor of the claimant.").  Plaintiff makes two arguments with respect to the "reasonable doubt" standard, namely (1) that the DOJ applied the wrong legal standard in evaluating the reasonable doubt raised by the First Affidavit, and (2) that the DOJ abused its discretion when it failed to find reasonable doubt because it valued the SSA records over the evidence in the Affidavits.

1.      "Reasonable Doubt" Legal Standard

Plaintiff argues that the Appeals Officer failed to apply the "reasonable doubt" standard, instead substituting a "preponderance of the evidence" standard.  (ECF No. 15 at 4-6.)  Plaintiff contends that RECA's requirement that all reasonable doubt be resolved in favor of the claimant means that, "[i]n other words, only if there is no reasonable doubt as to the eligibility of the claimant should his claim be denied."  (*Id.* at 5.)

Plaintiff's reading of the "reasonable doubt" standard does not comport with a plain reading of the statute.  Plaintiff concludes that, under RECA, a claimant should receive benefits unless his ineligibility is demonstrated beyond a reasonable doubt.  However, RECA's "reasonable doubt" standard requires no such presumption of eligibility.  Rather, the language merely suggests that all facts subject to reasonable doubt must be viewed in the light most favorable to the claimant; that is, if there is a fact

7

material to eligibility that is reasonably in doubt, such fact must be interpreted in support of the claim. Despite Plaintiff's protestations to the contrary, this does not mean that Plaintiff is entitled to benefits unless there is no reasonable doubt that he is not eligible.

The record here indicates that the DOJ properly applied the "reasonable doubt" standard. The Appeals Officer weighed the evidence in the First Affidavit against that in the SSA records, and found that "[i]n the face of such preponderant evidence, there is no reasonable doubt" as to Plaintiff's eligibility for benefits. (R. at 13.) That is, the Appeals Officer found that the SSA evidence so strongly outweighed contrary evidence, and the evidence supporting a finding of ineligibility was so significant, that there was no reasonable doubt as to Plaintiff's eligibility. Plaintiff reads the use of the word "preponderant" to signify that a preponderance of the evidence standard was applied here, and consequently that the requirement to resolve reasonable doubt in his favor was ignored. (ECF No. 15 at 5.) However, the Appeals Officer's decision makes clear that there was no evidence that raised a reasonable doubt which the Appeals Officer could or should have resolved in Plaintiff's favor. (R. at 13 ("As this is not a case where there is reasonable doubt as to whether the claimant meets the requirements of RECA . . . this claim should be denied.").)

Further, even if the Court were to accept Plaintiff's interpretation of the legal standard, the Appeals Officer's decision does not support a finding that he abused his discretion or denied the claim arbitrarily or capriciously. Plaintiff argues that "only if there is no reasonable doubt as to the eligibility of the claimant should his claim be denied." (ECF No. 15 at 5.) Here, the Appeals Officer found no reasonable doubt as to Plaintiff's eligibility, and his claim was denied on this basis.

8

The Court's duty on review is merely to "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Olenhouse*, 42 F.3d at 1574. The requisite showing was made here. The DOJ weighed the evidence in the record based on its relative reliability, found facts based upon that evidence, applied the correct legal standard, and articulated a rational connection between the facts and the conclusion that there was no reasonable doubt that Plaintiff was ineligible for benefits. Accordingly, the DOJ's decisions were not arbitrary and capricious or contrary to law.

      2.    <u>Social Security Records</u>

Plaintiff contends that, because SSA records from the 1960s are unreliable and frequently inconclusive (on account of incomplete reporting of employee earnings to the agency by some employers), the DOJ should not have relied upon them in finding no reasonable doubt that Plaintiff failed to meet the requisite 12 months of uranium mining employment. (ECF No. 17 at 6.) Plaintiff makes no argument with respect to the DOJ's calculation of radiation exposure. (*See id.*)

In essence, Plaintiff is arguing that the DOJ incorrectly weighed the evidence. However, on review, the Court may not "substitute [its] judgment for the agency's. Instead, [it] must uphold the agency if there is a rational basis for its decision." *Thomas Brooks Chartered*, 920 F.2d at 643. Thus, the Court may not reverse the agency merely because the Court may have come to a different conclusion. *See id.* As discussed above, the DOJ's finding that the SSA records outweighed the evidence in the Affidavits was based upon an examination of the relevant evidence and is a rational basis for the denial of benefits. *See Olenhouse*, 42 F.3d at 1574. Accordingly,

9

Plaintiff's argument does not give the Court any reason to reverse the DOJ's decision.

**B.     New Evidence on Appeal**

Plaintiff next argues that the DOJ's Appeals Officer improperly rejected the Second Affidavit as untimely when it should have been considered.  (ECF No. 17 at 4.) In support of his argument that the regulations contemplate the addition of evidence after the record below is complete, Plaintiff points to the regulations regarding appeals procedures, wherein the Appeals Officer "shall review any appeal and other information forwarded by the [RECP]."[3]  (*Id.* (citing 28 C.F.R. § 79.73).)  The DOJ responds that its procedures permit appellate review only of the evidence that was in the record before the Assistant Director, and note that Plaintiff's counsel was made aware of this practice by e-mail after he submitted the Second Affidavit with his appeal.  (ECF No. 16 at 15-17; R. at 15 (informing Plaintiff's counsel by e-mail that "[t]he RECA Appeals Office is precluded from considering new evidence on appeal").)

The regulations neither explicitly exclude new evidence from being considered within the "other information forwarded" from the RECP, nor do they state that the Appeals Officer shall consider only the evidence that was before the Assistant Director below.  However, an agency "is entitled to a measure of discretion in administering its own procedural rules in such a manner as it deems necessary to resolve [applications]

---

[3]  Plaintiff also cites an unpublished case from the Sixth Circuit, *Robinson v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 883 F.2d 75 (6th Cir. 1989) (table).  That case is utterly inapposite here because it deals with miners' affidavits under the Federal Mine Safety and Health Act of 1969 rather than RECA, and discusses affidavits that were discounted by the ALJ in the first instance rather than rejected on appeal.  (ECF No. 17 at 4.)  Notably, in response to the DOJ attorney who contacted him by e-mail regarding this issue, Plaintiff's counsel apparently cited the same unrelated Sixth Circuit case he attempts in vain to rely on here.  (R. at 15 (noting Plaintiff's reference to *Robinson*, 883 F.2d 75).)

quickly and correctly". *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538

(1970). Here, the agency permits re-filing of a claim up to three times where new

evidence arises after the Assistant Director's decision is made, as Plaintiff was made

aware in the DOJ's e-mail to Plaintiff's counsel; indeed, the DOJ invited Plaintiff to re-

file the claim if he intended the Second Affidavit to be considered. (R. at 15.)

Additionally, the procedures contemplate numerous opportunities to submit evidence

before the Assistant Director's decision, and do not list any corollary opportunities after

the decision. *See* 28 C.F.R. §§ 79.72-73.

The DOJ notes that agencies have wide discretion on procedural matters, and

that it, like federal courts, has a reasonable practice of limiting appellate review to the

record below. (ECF No. 16 at 17 (citing *Am. Farm Lines*, 397 U.S. at 538).) Plaintiff

makes no argument rebutting the DOJ's contention that it has broad procedural

discretion, nor is Plaintiff prohibited from re-filing his claim so that the Second Affidavit

may be considered.[4] Thus, the Court finds that the DOJ did not abuse its discretion in

refusing to consider newly submitted evidence on appeal.

## C.     Use of Affidavits

Plaintiff contends that Juanita Espinoza's Affidavits were improperly rejected or

discounted, arguing that: (1) affidavits are an acceptable form of evidence to prove 12

months of uranium mining employment; and (2) the DOJ has an arbitrary and

capricious practice of rejecting affidavits from family members while considering

---

[4] The Court notes that even if the Second Affidavit were considered, it may not have any
impact on the agency's decision, as it contains the same lack of firsthand knowledge of
Plaintiff's employment that led the Assistant Director to discount the First Affidavit. (*See* R. at
19.)

affidavits from former coworkers.

        1.      <u>Statutory and Regulatory Limitations on the Use of Affidavits</u>

In its Response, the DOJ contends that the 2000 Amendments to RECA permit use of affidavits only to show exposure to the requisite number of WLMs of radiation, not to show the alternative 12 months of uranium mining employment.  (ECF No. 16 at 11, 13-14.)  Both the Assistant Director's decision and the Appeals Officer's decision make reference to this limitation when discussing the First Affidavit.  (R. at 25-26 nn.1-2 (citing the regulations); R. at 12 ("The information contained in the affidavit is not illuminating on the issue of the WLM calculation, the only purpose the affidavit would serve").)  Because Plaintiff argues that he is eligible for benefits based only upon the 12-month employment period and does not attempt to show the requisite WLMs of radiation exposure, the DOJ contends that Ms. Espinoza's affidavits cannot be considered in support of Plaintiff's claim.  (ECF No. 16 at 13-14.)

In rebuttal, Plaintiff argues that the language of the regulations after the 2000 Amendments permits the use of affidavits to establish "employment in a uranium mine", which includes "[t]he actual time period the claimant worked in each mine".  (ECF No. 17 at 4-6.)  Thus, Plaintiff argues that both the statute and the regulations permit the use of affidavits to demonstrate the claimant's length of employment in uranium mining for purposes of satisfying the 12 month minimum.  (*Id.* at 5 n.2.)

Plaintiff's briefs cite no cases or regulatory decisions supporting his reading of the regulations.  Nevertheless, the Court need not decide this issue, because the agency's decisions did not depend on the statutory interpretation the DOJ now presents in its Response.  The Assistant Director discredited the First Affidavit not because

affidavits cannot be used to substantiate the qualifying 12-month uranium mining employment period, but because it was unreliable due to Ms. Espinoza's lack of firsthand knowledge of Plaintiff's employment and its lack of specificity regarding the mine where Plaintiff worked.  (R. at 26.)  The Appeals Officer then affirmed the Assistant Director's decision based on his reasonable weighing of the evidence in view of the record as a whole.  (R. at 13.)

Accordingly, the Court finds that the DOJ's decision finding the SSA evidence outweighed the Affidavits was not arbitrary and capricious, an abuse of discretion, or contrary to law.

2.    <u>Practice of Rejecting Family Affidavits</u>

Finally, Plaintiff argues that the DOJ has an arbitrary and capricious practice of rejecting affidavits from family members while considering affidavits from former coworkers.  (ECF No. 15 at 9-13.)  Plaintiff bases this assertion primarily on language in the Assistant Director's decision noting that Juanita Espinoza did not work with Plaintiff.[5]

This argument misreads the context of the Assistant Director's analysis, which states as follows:

---

[5] In support of this argument, Plaintiff also cites his counsel's own experience with filing successful RECA claims with supporting affidavits from coworkers.  (*Id.* at 13 (citing R. at 26).)  To substantiate this anecdotal evidence, Plaintiff has attached to his Opening Brief two exhibits that appear to be excerpts from other RECA claims for different claimants.  (ECF Nos. 15-1 & 15-2.)  The Court cannot consider this evidence because, pursuant to RECA, the Court must review the DOJ's denial of benefits on the Administrative Record alone, and Plaintiff's exhibits are not part of that Record.  *See* RECA § 6(l).  As noted in the DOJ's Response, the Joint Case Management Plan permitted motions to supplement the Record with additional evidence, but Plaintiff filed no such motion.  (ECF No. 16 at 19 (citing ECF No. 14).)  Accordingly, the Court will not consider Plaintiff's anecdotal argument regarding counsel's past experience with unrelated RECA claims, as it is purely speculative and without support.

> [T]he affidavit lacks sufficient specificity to overcome the
> evidence of Mr. Espinoza's work history as described by
> SSA records.  Mrs. Espinoza does not identify the name of
> the mine in which the claimant worked or whether his
> employment was aboveground or underground.  In addition,
> Mrs. Espinoza indicates that she did not work with Mr.
> Espinoza.  Therefore, it is unclear how she has firsthand
> knowledge of this alleged employment.

(R. at 26 (footnote omitted).)  The Assistant Director discounted the First Affidavit in part because he questioned the basis of Juanita Espinoza's "firsthand knowledge" of Plaintiff's employment, and not because she is Plaintiff's family member (as opposed to, for example, having been a former coworker).  That is, the Assistant Director questioned the First Affidavit's reliability as evidence because it is hearsay, not because it comes from Plaintiff's family member.  Therefore, this passage does not support Plaintiff's contention that the DOJ has arbitrarily and capriciously rejected the Affidavits because they are written by a family member instead of a coworker.

Because Plaintiff has no other support for his argument that the DOJ has an arbitrary and capricious practice of discounting family members' affidavits, the Court rejects this argument and finds that the DOJ properly considered the First Affidavit.

In sum, Plaintiff has failed to establish that the DOJ's decision to deny him RECA benefits was arbitrary and capricious, an abuse of discretion, or otherwise contrary to law.

## IV.  CONCLUSION

For the reasons set forth above, the DOJ's decision is AFFIRMED.

Dated this 5th day of December, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge